# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

CHRISTOPHER R. KING,
dba, CK CONSTRUCTION,
LLC,

**Bankruptcy Case
No. 07-02042-JDP**

**Debtor.**

_____

JB CONSTRUCTION, INC.,
an Idaho corporation,

**Plaintiff,**

**vs.**
CHRISTOPHER R. KING,
dba, CK CONSTRUCTION
LLC,

**Adv. Proceeding No. 08-6031**

**Defendant.**

_____

## MEMORANDUM OF DECISION
_____

David V. Nielsen, Boise, Idaho, Attorney for Plaintiff.

Patrick J. Geile, FOLEY FREEMAN, Meridian, Idaho, Attorney for
Defendant.

MEMORANDUM OF DECISION - 1

*Introduction*

Plaintiff JB Construction, Inc. ("Plaintiff") seeks a determination that

Defendant Christopher R. King ("Defendant") willfully and maliciously

breached an agreement between the parties, such that Plaintiff's claim for

damages should be excepted from discharge in Defendant's bankruptcy

case under § 523(a)(6)[1] of the Bankruptcy Code.

*Background and Facts*

Plaintiff is an Idaho company that specializes in the placement of

concrete for both commercial and residential builders.

In 1999, Defendant began working for Plaintiff as an hourly

employee, earning $9.00 per hour.  Defendant started as a general laborer,

but received regular promotions and pay increases.  On May 6, 2000,

Plaintiff promoted Defendant to foreman.  In this position, Defendant was

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 2

responsible for preparing "take-offs,"[2] which were used in compiling

Plaintiff's estimates and bids for projects.

In January, 2006, Defendant was again promoted, this time to a

supervisor, and his wage was increased to $24.00 per hour.  As a

supervisor, Defendant was the primary contact with many of Plaintiff's

customers, and he was responsible for scheduling projects and ensuring

that the job proceeded smoothly.  John Bernstrom, Plaintiff's owner and

President, testified that one of Defendant's responsibilities as a supervisor

was to establish and foster a positive rapport with Plaintiff's customers, so

that Plaintiff would be positioned to obtain repeat business from these

customers.  It was in connection with this promotion that Plaintiff had

Defendant sign a written contract, which contained a "non-compete"

clause, discussed in detail below.

A year later, on January 29, 2007, Defendant's employment with

Plaintiff was terminated.  At that time, Bernstrom reminded Defendant

---

[2] Defendant described these "take-offs" as the initial computations and calculations of materials required for Plaintiff to perform a job.

MEMORANDUM OF DECISION - 3

that he had signed a non-compete agreement.

Defendant sought the advice of an attorney regarding the validity of the covenant not to compete with Plaintiff contained in the agreement. The lawyer informed him that the non-compete provision was void and unenforceable under Idaho law.

Thereafter, on February 20, 2007, Defendant formed CK Construction, LLC, a new concrete placement business.  Defendant, acting through his company, immediately began to solicit work from potential customers, several of whom were customers of Plaintiff with whom he had contact while employed by Plaintiff.

Defendant's business failed, and on December 28, 2007, he filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.[3] Plaintiff commenced this adversary proceeding against Defendant on March 19, 2008.  The Court conducted a trial on December 4, 2008, at which both parties appeared and presented evidence and testimony.  At

---

[3] Defendant listed Plaintiff as a creditor in his bankruptcy schedules, but only for amounts owed by Defendant to Plaintiff on a 2006 loan, a claim not related to the non-compete agreement.

MEMORANDUM OF DECISION - 4

their request, the parties submitted their closing arguments via written

briefs.  Docket Nos. 36 - 39.

Having carefully considered the record, the evidence and testimony,

and the arguments of the parties, this Memorandum constitutes the

Court's findings of fact and conclusions of law, and disposition of the

issues.  Rules 9014, 7052.

### Discussion and Disposition of the Issues

### I.

Though not generally favored in the employment context in Idaho,

non-compete agreements may nonetheless be valid and enforceable when

their terms are reasonable as applied to the parties to the agreement and

the general public.  *Bybee v. Isaac*, 178 P.3d 616, 622 (Idaho 2008) (citing

*Stipp v. Wallace Plating, Inc.*, 523 P.2d 822, 823 (Idaho 1974)).  Put another

way, a covenant not to compete may be enforced if the covenant: "(1) is

not greater than is necessary to protect the employer in some legitimate

business interest; (2) is not unduly harsh and oppressive to the employee;

and (3) is not injurious to the public."  *Freiburger v. J-U-B Engineers, Inc.* 111

MEMORANDUM OF DECISION - 5

P.3d 100, 105 (Idaho 2005) (citing RESTATEMENT (SECOND) OF

CONTRACTS § 188 (1981)).  The Idaho Supreme Court, although

acknowledging that other courts apply different standards of

reasonableness, has explained that the approach for testing non-compete

contracts in this state is "to simply determine whether or not the clause is

no more restrictive than necessary to protect the employer's legitimate

business interests." *Id.*

## A.

Here, Defendant argues that Plaintiff failed to establish a legitimate

business interest worthy of protection by the covenant not to compete,

such as trade secrets or copyrighted information.  He contends that the

only evidence presented on this point was Bernstrom's testimony that he

did not want Defendant "poaching" his customers.

Although an employer is generally not entitled to protect its

business against ordinary competition, it may shield it "from the

detrimental impact of competition by employees who, but for their

employment, would not have had the ability to gain a special influence

MEMORANDUM OF DECISION - 6

over clients or customers." *Freiburger*, 111 P.3d at 105. "Thus, 'the

employer has a protectable interest in the customer relationships its former

employee established and/or nurtured while employed by the employer,

and is entitled to protect itself from the risk that a former employee might

appropriate customers by taking unfair advantage of the contacts

developed while working for the employer.'" *Id.* (quoting *W.R. Grace &*

*Co. v. Mouyal*, 422 S.E.2d 529, 531 (Ga. 1992)).

Bernstrom testified without contradiction that a substantial portion

of Plaintiff's work is derived from repeat jobs from former customers. By

promoting him to a supervisor, Plaintiff placed Defendant in direct contact

with its customers. His undisputed testimony showed that one of

Defendant's responsibilities as supervisor was to establish a rapport with

customers, and to thereby develop Plaintiff's goodwill. Under these

circumstances, the Court concludes that Plaintiff had a legitimate business

interest in protecting its customer relationships which Defendant helped to

develop while in Plaintiff's employ.

MEMORANDUM OF DECISION - 7

B.

Because Plaintiff has established it held a protectable business interest, the Court must next determine whether the particular non-compete provision in the parties' agreement is no more restrictive than necessary to protect Plaintiff's interest. In making this determination, the Court may consider whether the restriction is reasonably limited as to time, scope, and territorial extent. *Bybee*, 178 P.3d at 622 (citing *Vancil v. Anderson*, 227 P.2d 74, 77 (Idaho 1951)).

The agreement Defendant concedes he executed provides in pertinent part that:

> During the term of [Defendant's] employment by [Plaintiff] and for two (2) years after termination of such employment for the Idaho counties of Ada, Canyon, Elmore, Valley and Gem, [Defendant] agrees that [he] will not, without the prior written consent of [Plaintiff], directly or indirectly, whether as an employee, officer, director, independent contractor, consultant, stockholder, partner or otherwise, engage in or assist others to engage in or have any interest in any business which engages in, any attempt to take the business of any past or present clients or projects of [Plaintiff] with which [Defendant] had

MEMORANDUM OF DECISION - 8

contact.

Ex. 100.

Defendant is a long-time resident of the Treasure Valley. When his employment with Plaintiff was terminated, he chose to remain in the area and to begin his own concrete placement business. He argues that the geographic restriction imposed upon him by the agreement with Plaintiff is unreasonable because the Treasure Valley is the primary population center in Idaho and Ada, Canyon, Elmore, Gem, and Valley counties represent the entire feasible business region in the area. Since Defendant's new business is based in Ada County, it would be fundamentally unreasonable, he argues, to enforce an agreement that prevents him from operating a successful concrete placement business in this area.

Defendant's argument lacks merit. Although he may be correct in suggesting that the five counties identified in the non-compete clause compose the entire feasible market in *this* area,[4] the contract restriction at

---

[4] Of course, while as a practical matter, it may require him to relocate, the contract restriction does not prevent Defendant from pursuing his business outside the listed Treasure Valley counties.

MEMORANDUM OF DECISION - 9

issue here is not a blanket prohibition against his working in the concrete

placement industry in these five counties.  For example, nothing in the

agreement restricts Defendant from contacting or working with customers

that have had no prior business dealings with Plaintiff.  Moreover, the

agreement does not prohibit Defendant from soliciting work from all of

Plaintiff's past customers; it applies only to those with which Defendant

had personal contact during his employment with Plaintiff.

  The Court declines to conclude that the geographical scope of the

non-compete covenant is unreasonable.  But even if the Court were to find

the geographic reach of the covenant too onerous, because the agreement

affects only customers with whom Defendant had contact while employed

with Plaintiff, the scope of this restriction is reasonable.  *See Pinnacle*

*Performance, Inc. v. Hessing*, 17 P.3d 308, 312 (Id. Ct. App. 2001) (explaining

that "an otherwise overly broad geographical limitation may be

considered reasonable if the class of persons with whom contact is

prohibited is sufficiently limited.").

  The Court also concludes that it was reasonable for Plaintiff to

MEMORANDUM OF DECISION - 10

require that Defendant refrain from competing for two years.  The Idaho

Supreme Court has upheld longer restrictions in non-compete agreements.

*See, e.g., Bybee*, 178 P.3d at 623 (five year restriction against competition in

the context of a sale of a business is upheld); *Marshall v. Covington*, 339

P.2d 504, 508 (Idaho 1959) (three year restriction on competition is

reasonable).  Considering the relatively short time restriction in this

agreement in concert with the other limitations narrowing its scope, the

Court concludes that Defendant's contract with Plaintiff was no more

restrictive than necessary to protect Plaintiff's customer relationships.  The

non-compete clause is therefore valid and enforceable.

II.

Having established that the non-compete agreement is valid and

enforceable, the Court must next determine whether Defendant breached

the agreement.  Essentially, the non-compete agreement prohibited

Defendant for a period of two years from attempting to either directly or

indirectly do concrete placement business with any of Plaintiff's past or

present customers with whom Defendant had contact during his

MEMORANDUM OF DECISION - 11

employment.  *See* Ex. 100.

Defendant concedes that during his employment with Plaintiff he had direct contact with many of Plaintiff's existing and former customers. He also concedes that after being terminated, he contacted some of those same customers, and requested an opportunity to give them estimates on some of their future projects.  Defendant explains, however, that he refrained from contacting these builders until after he had consulted an attorney and was advised that his non-compete agreement with Plaintiff was void and unenforceable.

Notwithstanding the advice he received from counsel, the Court has concluded that the non-compete covenant was enforceable, and Defendant's solicitations to Plaintiff's customers amounted to a breach of his contract with Plaintiff.  As a result, Plaintiff is entitled to recover damages from Defendant as provided by the parties under the terms of their agreement in the amount of $5,000.  Ex. 100.

III.

The final, and perhaps most important aspect of the analysis of the

MEMORANDUM OF DECISION - 12

parties' relationship, though, focuses on whether Defendant may

discharge Plaintiff's money damage claim against him in Defendant's

bankruptcy case.

Section 523(a)(6) of the Bankruptcy Code provides that an

individual debtor may not discharge a debt "for willful and malicious

injury by the debtor to another entity or to the property of another entity."

That the debtor's conduct represent both a "willful injury" and "malicious

injury" are separate and distinct requirements under § 523(a)(6).[5] *Barboza*

*v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008).  In

addition, the Ninth Circuit has recently clarified that in order for a debt

resulting from a breach of contract to be nondischargeable under this

provision, the debtor's conduct giving rise to the debt must also be

tortious.  *Lockerby v. Sierra*, 535 F.3d 1038, 1040-41 (9th Cir. 2008) (citing

---

[5]  A "willful" injury is a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* which leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original); *Ditto v. McCurdy*, 510 F.3d 1070, 1078 (9th Cir. 2007).  A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002) (citing *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

MEMORANDUM OF DECISION - 13

*Petralia*, 238 F.3d at 1205-06).  Conduct is tortious for purposes of

§ 523(a)(6) only if it constitutes a tort under state law.  *Lockerby*, 535 F.3d at

1041.

Plaintiff argues that Defendant's actions in this case constitute the

tort of interference with contract, or alternatively, interference with

Plaintiff's potential economic advantage.  The Court disagrees.

As a general rule, "a party cannot tortiously interfere with its own

contract."  *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho*, 851 P.2d 946, 950

(Idaho 1993).  Thus, "an action for intentional interference with contract

can only lie against a third party."  *BECO Const. Co., Inc. v. J-U-B Engineers,

Inc.*, 184 P.3d 844, 849 (Idaho 2008).  To establish a prima facie case of the

tort of interference with contract, the plaintiff must prove: (1) the existence

of a contract, (2) knowledge of the contract on the part of the defendant, (3)

intentional interference causing a breach of the contract, and (4) injury to

the plaintiff resulting from the breach.  *BECO Const. Co.*, 184 P.3d at 848;

*Barlow v. Int'l. Harvester Co.*, 522 P.2d 1102, 1114 (Idaho 1974).

The evidence shows that on September 20, 2006, Plaintiff submitted

MEMORANDUM OF DECISION - 14

an estimate to Harris Homes[6] for a project that was known as the

Waterfront Town Home Building B.[7]  Ex. 109.  At that time, Defendant was

a supervisor for Plaintiff and he prepared the take-off numbers which

were used in the estimate.  Approximately eight months after being

terminated from Plaintiff, Defendant prepared and submitted a bid on the

same project.  Defendant was awarded the contract, and performed the

work on that project.  Plaintiff argues that since these actions were a

deliberate attempt to take the business of its customer, and in fact resulted

in a loss of that business, the elements of the tort of interference with

contract are satisfied.

This conclusion is flawed since Plaintiff failed to show that a

contract between Plaintiff and Harris Homes existed, and that Defendant

---

[6] Plaintiff's post-trial brief erroneously refers to this contractor as Comfort Homes.  Docket No. 37.  Although both Plaintiff and Defendant did work for Comfort Homes, the testimony and evidence are clear that the contractor on this particular project was Harris Homes.  The erroneous reference in the brief is innocuous here.

[7] The testimony revealed that there was also a project for a Waterfront Town Home Building A, on which Plaintiff bid, was awarded the contract, and ultimately completed the work.  However, the record is unclear as to when the bidding and construction on that project actually occurred.

MEMORANDUM OF DECISION - 15

knew of its existence and intentionally interfered with it.  Although it is

clear that Defendant knew Plaintiff had submitted a bid on this project,

that is not enough.  In the construction context, an estimate or a bid is not

equivalent to a contract to perform work.  Bernstrom testified that

although Plaintiff did considerable work for Harris Homes, it did not have

a standing contract with that customer, or with any of its other repeat

customers.  In the absence of a contract with a third party, Plaintiff cannot

establish a prima facie claim against Defendant for the tort of interference

with contract.

To establish a claim for intentional interference with a prospective

economic advantage, Plaintiff must show:

> (1) the existence of a valid economic expectancy,
> (2) knowledge of the expectancy on the part of
> the interferer, (3) intentional interference
> inducing termination of the expectancy, (4) the
> interference was wrong by some measure beyond
> the fact of the interference itself, and (5) resulting
> damage to the plaintiff whose expectancy has
> been disrupted.

*Cantwell v. City of Boise*, 191 P.3d 205, 216 (Idaho 2008).  Though similar to

MEMORANDUM OF DECISION - 16

the tort of interference with contract, this cause of action does not require

the existence of a contract between the plaintiff and a third party.

However, the Idaho Supreme Court has explained that to be actionable,

the interference must be undertaken by the defendant for an improper

purpose or by an improper means. *Highland Enter., Inc. v. Barker*, 986 P.2d

996, 1004 (Idaho 1999). In other words, "the means used to cause injury

must be wrongful by reason of a statute, regulation, recognized common

law rule, or an established standard of a trade or profession." *Yoakum v.*

*Hartford Fire Ins. Co.*, 923 P.2d 416, 423 (Idaho 1996). Plaintiff has failed to

establish that this element is satisfied in this case.

Defendant's actions stand in sharp contrast to the actionable

interference found to exist in *Highland*. In that case, the plaintiff engaged

in the construction of forest roadways instrumental in the harvesting and

sale of timber. The court found that defendant interfered with plaintiff by

spiking trees, damaging construction equipment, placing obstacles with

protruding nails in the roadway, taking survey stakes, and piling slash in

the roadway. *Highland*, 986 P.2d at 1002.

MEMORANDUM OF DECISION - 17

Here, Defendant engaged in no behavior similar to that described in

*Highland* designed to interfere with the plaintiff's potential economic

expectancy.  Defendant merely submitted bids on projects that, in most

cases, he was unaware that Plaintiff was also bidding.  In short, Plaintiff

has failed to demonstrate how Defendant's actions were wrongful by some

measure beyond the fact of interference itself.

Defendant breached its non-compete contract with Plaintiff.  But

because Defendant's conduct did not amount to a tort under Idaho law,

Plaintiff's damage claim is not excepted from discharge under § 523(a)(6).[8]

### *Conclusion*

The non-compete provision in the parties' agreement is sufficiently

limited in scope and time so as to be no more restrictive than necessary to

protect Plaintiff's legitimate business interests.  As such, the covenant is

valid and enforceable.

Defendant breached that agreement by submitting bids to builders

---

[8]   Because Defendant's conduct is not tortious for purposes of § 523(a)(6),
the Court need not analyze whether that conduct was also willful and a
malicious as measured by the Supreme Court's *Geiger* standard.

MEMORANDUM OF DECISION - 18

with whom he had contact while employed by Plaintiff.  Under the

agreement, Plaintiff is entitled to damages from Defendant in the amount

of $5,000.

However, because Defendant's conduct in breaching the covenant

not to compete would not, under the Idaho case law, constitute a tort,

Plaintiff's claim for damages against Defendant is not excepted from

discharge pursuant to § 523(a)(6).[9]

A separate form of judgment will be entered.

Dated:  January 22, 2009

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[9]  Plaintiff's complaint also requests that Defendant be enjoined from
competing against Plaintiff in violation of the terms of the non-compete
agreement.  Because Plaintiff did not show Defendant continues to compete with
Plaintiff in violation of the covenant, and because the term of the covenant will
shortly expire, the Court declines to grant any injunction.

MEMORANDUM OF DECISION - 19